## Minnie Parker et al., Appellees, v. Lewis Wainwright et al., Appellants.

### Gen. No. 4,910.

1. WILL—*what not ground for setting aside.* The fact that improper relations may have existed between a testator and a beneficiary is no ground for setting aside a will.

2. CONDUCT OF COUNSEL—*when ground for reversal.* In a will contest, the conduct of counsel in repeatedly insinuating by his questions and in urging in his argument that a beneficiary was a dissolute person, where no sufficient foundation for such insinuations and argument appears, is so prejudicial as to require the award of a new trial.

Bill to contest will. Appeal from the Circuit Court of Jo Daviess County; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1907. Reversed and remanded. Opinion filed March 11, 1908.

HODSON & CAMPBELL, for appellants.

SHEEAN & SHEEAN and THOMAS H. HODSON, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

John Hileman died December 28, 1905, in Jo Daviess county, leaving a will executed December 9, 1905, which was duly admitted to probate. He was in his eighty-eighth year when he died, and he left an estate of about $5,000, all of which was personalty. He left a son and three daughters. He bequeathed small sums of money to two of his daughters and to his son and to a son-in-law and to two of his

grandchildren, who, however, were called "nephew" and "niece" in the will. The total of the sums so bequeathed was $510. He ordered the erection of a suitable monument over the graves of himself and his deceased wife at an expense of not over $500 and gave the rest of his property to Lewis Wainwright and his wife Hilda, share and share alike. The heirs at law and the legatees, other than the Wainwrights, filed a bill to contest the validity of said will on two grounds; first, that at the time said will was executed the testator was mentally incapable of making a will; second, that the Wainwrights used many fraudulent practices and resorted to falsehood and misrepresentation to induce testator to execute said will, and that in executing the same he was under improper restraint and undue influence from the arts and fraudulent practices of the Wainwrights, said alleged arts and fraudulent practices being set out in detail in the bill. The bill was answered by the Wainwrights and by the executor, and upon a jury trial there was a verdict that the instrument in question was not the will of said John Hileman, and a decree to that effect was entered, from which this appeal is prosecuted.

The testator's wife died in 1884. Thereafter he had several different women to act as his housekeeper and part of the time a relative. While one of these women was acting as his housekeeper a young woman named Anne Beverly came there to live. Afterwards the housekeeper left and Anne Beverly became the housekeeper, and he lived alone with her in two or three different places. During this time she married one Brenneman, and they removed to Kansas, and John Hileman lived in Kansas with them until Brenneman died. John Hileman then left that household and returned to Jo Daviess county, and went to live with Mr. and Mrs. Wainwright in Warren, and there lived and was cared for till his death.

In 1899 his children filed a petition in the County Court to have a conservator of his estate appointed. He resisted the application. His estate at that time consisted of a note for $6,000 secured by a real estate mortgage. A compro-

mise was effected between Hileman and his children, by
which Hileman transferred said note and mortgage to a
trustee, and the trustee was to keep the principal of the
fund invested in interest-bearing securities, and from the
interest pay the taxes, and spend the rest of the interest upon
Hileman's support during the rest of his life, with a pro-
vision that, if Hileman should think he needed any portion
of the principal, he might petition the County Court for an
order to have some of the principal expended in his be-
half; and in consideration thereof the children were to dis-
miss their petition for the appointment of a conservator.  It
was provided in said agreement that the settlement should
not prevent the children from contesting any will that Hile-
man might make.  The children, by another contract be-
tween themselves, agreed that if their father made a will
distributing his estate unequally between his children, they
would nevertheless share the property in equal parts.  That
controversy seems to have been brought on because Hileman
persisted in living in the same house with Anne Beverly or
Mrs. Brenneman, and would not go to live with Mrs. John-
son, the daughter whose name was entirely omitted from the
will.

Counsel for appellees in opening the case to the jury
called Mrs. Brenneman a disreputable woman and a harlot,
and told the jury that John Hileman had lived with her in
open and notorious improper relations, and that it was an
outrage for him to give his property to absolute strangers.
In the cross-examination of appellants' witnesses, and some-
times in the cross-examination of witnesses who did not
know Mrs. Brenneman, they were asked by appellees' coun-
sel if they knew of his having had improper relations with
Mrs. Brenneman; if the witness knew that Hileman had
an insane desire towards Mrs. Brenneman; if he knew what
kind of a character Anne Beverly or Mrs. Brenneman was;
if Hileman and Anne Beverly were living in an open and
notorious state of adultery; and the like.  These questions
were put by appellees' counsel to many witnesses, and many
such questions were asked of witnesses who knew nothing

Parker v. Wainwright.

about her, either before or after her marriage to Brenneman. In the closing argument to the jury appellees' counsel called Mrs. Brenneman a harlot and a prostitute. This attack had very little foundation in the testimony. Hileman must have been over seventy-five years old when Anne Beverly first lived in his household. Our attention is not called to any proof in the record that she was a dissolute woman. The only fact in evidence subjecting her to criticism is that she lived alone with Hileman in a house, or a part of the time alone with Hileman in a part of a house occupied also by another family. There was proof also that she and Hileman had been seen riding together and sitting upon the porch of the house and talking together. There was no proof that any one had ever witnessed any improper conduct between them. She married during the time she was keeping house for Hileman, which makes it very improbable that their relations were improper. If their relations were meretricious, no charge of that kind was made in the bill, and immorality affords no ground for setting aside a will. Moreover, he left Mrs. Brenneman in Kansas when her husband died, and he returned to this State and lived here between two and three years thereafter before his death. There is no proof that he ever afterwards was under the influence of Mrs. Brenneman at all, or ever afterwards saw her, or that she desired him to make a will in favor of the Wainwrights, or knew that he had done so. If the fact that he lived in the same house alone with Mrs. Brenneman before her marriage has any tendency to show a mental incapacity to make a will, then appellees were entitled to that fact. Beyond that this evidence and these remarks to the jury had no proper place in this suit. The court repeatedly sustained objections to this line of argument and evidence, but it was persisted in and carried to a very great length. It is obvious that the jury were made to imagine that Hileman had had improper relations with Mrs. Brenneman, and that condition was used to prejudice the jury very greatly against this will. We conclude that the course pursued by appellees' counsel on this subject during the trial deprived appellants

of a fair trial of the true issues in the case, and that they are therefore entitled to a new trial.

The evidence upon the subject of mental capacity was conflicting, but there seems to be a clear preponderance in support of the will. There was practically no evidence of any undue influence exercised on the testator by the Wainwrights, except that, though paid for his support by the trustee, they probably exercised greater kindness towards the testator than money could have bought. If the certificate of evidence had plainly shown that it contained all the evidence introduced, it would be a serious question whether the court should have given any instructions for appellees on the subject of undue influence; but the usual statement that this was all the evidence heard at the trial was omitted from the certificate, and while it probably does contain all the evidence, that fact can only be established by a process of reasoning or inference, and we therefore do not discuss these instructions.

It is said that this will is an outrage upon his heirs at law, and the case seems to have been argued to the jury on that basis by appellees. That position is unsound, if the testator was mentally capable of making a will and did not act under the undue influence alleged. The owner of property has a right to will the same to such persons as he sees fit. It is his property, and not the property of his heirs at law. Moreover, these children, in the testator's extreme old age, practically deprived him of the use of the principal of his estate, or subjected him to the necessity of appealing to the County Court whenever he thought his actual necessities required more than the income. The proof shows that he became embittered towards his children because of this course of conduct. That result was natural. The Wainwrights and their children treated him kindly and affectionately and performed for him many kind offices in his last years and in his last and lingering illness. This kindness was not undue influence, and the testator, if mentally capable of making a will, had a right to reward them.

The decree is therefore reversed and the cause remanded.

*Reversed and remanded.*